## WITTEN, Appellant, v. TORGERSON, Respondent.

### (233 N. W. 289.)

(File No. 6823. Opinion filed December 5, 1930.)

*Lyon, Bradford & Grigsby,* of Sioux Falls, for Appellant.

*Gardner & Churchill,* of Huron, and *Baldwin & Lyons,* of Howard, for Respondent.

POLLEY, J. This action is brought to recover on a promissory note for $7,500 given by defendant in part payment for the purchase of 50 shares of the capital stock of the Commercial & Savings Bank of Sioux Falls. The total purchase price of the 50 shares of stock was $10,000, but defendant made a cash payment of $2,500 when he subscribed for the stock.

The case was tried to a jury, and at the close of all the evidence the plaintiff moved for a directed verdict for the full amount demanded in the complaint. This motion was denied, and the jury returned a verdict for the defendant. Plaintiff then moved for judgment notwithstanding the verdict. This motion was denied, and judgment was entered on the verdict. From this judgment and an order denying plaintiff's motion for a new trial, plaintiff appeals.

In his answer defendant pleaded the statute of limitations, want of consideration, and fraud and misrepresentation in inducing defendant to purchase the stock. Only the latter defense is involved on this appeal.

The history of the transaction involved in this case is essentially the same as that involved in Smith v. Groesbeck, 54 S. D. 350, 223 N. W. 308; and reference is made to that case for a statement of the principal facts in this. That case was brought to recover a stock assessment, while in this case the defendant paid his stock assessment without raising any question as to the ownership of the stock.

Defendant purchased his 50 shares of stock under circumstances practically identical with those described in Smith v. Groesbeck. The note sued on in this case was executed and delivered to Mr. Wenzlaff's agent on the 29th day of July, 1919. On the 20th day of October, 1919, Wenzlaff transferred the note to the Commercial & Savings Bank and was given credit for the amount thereof on the note he gave to the bank when he bought the stock. On the 14th day of March, 1921, the capital stock of the bank was reduced from 5,000 shares to 2,000 shares. This reduced defendant's stock from 50 shares to 20 shares. On the 27th day of April, 1921, $300,000 of the bank's assets, consisting of promissory notes and other bank paper, including the note sued on in this action, was charged out of the bank's assets and placed in a special fund for the benefit of the stockholders of record on the 9th day of March, 1921, in lieu of the stock returned by them to the bank when the bank's capital was reduced. By order of the circuit court of date April 27, 1921, the plaintiff was appointed trustee of this fund, and it is in his capacity as such trustee that he brings this action.

In his answer defendant alleges that the agents of Mr. Wenzlaff who sold him the stock represented to him that the bank was in a prosperous condition; that it was doing a profitable business, and that it was paying large dividends on its then capital of $500,-000; and that the stock was worth $200 a share; that it was these representations that induced him to make the purchase. He then alleges that the bank was not in good financial condition; that it was carrying large quantities of worthless assets; that it had not been paying dividends in large amounts and could not pay dividends on a capitalization of $500,000; and that any dividends that may have been paid had been paid out of capital and not out of earnings. Defendant then alleges: "That the defendant believed the said representations and statements so made

to him to be true and relying thereon was induced thereby to subscribe for the purchase of fifty shares of the stock of said bank of the par value of $100.00 per share for a purchase price of $10,000.00 and the note described in paragraph VI of plaintiff's complaint was executed by defendant as a part of the purchase price of said stock and the balance in the sum of $2,500.00 was thereupon paid in cash."

After the above transaction defendant acted as a stockholder in the bank. He attended stockholders' meetings both by proxy and in person. Three dividends were paid. One of these was paid in cash and accepted by him, the other two being applied on the said note, but he had notice of such payment. At some date not shown in the record after the reduction of the bank's capital, an assessment of $100 per share was levied on the capital stock. This assessment on defendant's 20 shares of stock amounted to $2,000. He paid this assessment apparently without any objection, and certainly without any contention that he was not the owner of the stock, or that he had been cheated or defrauded when he purchased the same. He assumed the obligations of a stockholder, and accepted the benefits, such as they were, of a stockholder. He made no attempt to rescind. He never offered to return the stock and never raised the question of fraud until after the commencement of this action, which was six full years, lacking one day, after the execution of the note. Under these circumstances, defendant should not be allowed to escape paying for the stock because of the alleged misrepresentations that were made to him at the time he purchased it six years prior to the commencement of the action. Moreover, there is no sufficient evidence to show that the stock was not worth as much when defendant purchased it as it was represented to be worth at that time. It does not follow that, because the bank became insolvent in 1924, its stock was not worth $200 a share when the note was executed. Statements of the bank in evidence show that the assets of the bank on the 9th day of July, 1918, amounted to $451,149.22; on the 21st day of January, 1919, they had reached $1,006,668.53; and on the 7th day of July, 1919, $1,419,566.42. There is no way of knowing that, had business conditions remained the same during the years from 1919 until 1924, defendant's purchase of his 50 shares of stock would not have proved a profitable investment.

The judgment and order appealed from must be reversed. Plaintiff's motion for judgment notwithstanding the verdict should have been granted, and the cause will be remanded to the trial court, with directions to enter judgment for the amount demanded in the complaint.

BROWN, P. J., and SHERWOOD, CAMPBELL, and BURCH, JJ., concur.